UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHELLE WROBLEWSKI-KRESS,

                              Plaintiff,

              -vs-                                    06-CV-170C

JO ANNE B. BARNHART,
Commissioner of Social Security,

                              Defendant.

_____

_____

        Plaintiff Michelle Wroblewski-Kress initiated this action pursuant to 42 U.S.C.

§ 405(g) to review the final determination of the Commissioner of Social Security

("Commissioner") denying her application for Social Security disability ("SSDI") benefits.

The Commissioner has filed a motion for judgment on the pleadings, and the plaintiff has

cross-moved for the same relief, pursuant to Fed. R. Civ. P. 12(c).  For the following

reasons, the Commissioner's motion is denied, and plaintiff's cross-motion is granted.


                              **BACKGROUND**

        Plaintiff was born on July 3, 1959 (T. 44).[1]  She applied for SSDI benefits on April 8,

2003, with an alleged disability onset date of July 1, 2002 (*id.*).  She alleges disability

based on back problems, carpal tunnel syndrome, neurocardiogenic syncope,[2] and

pulmonary embolism (T. 288-89).  Plaintiff's application was denied on June 19, 2003 (T.

34).  Plaintiff requested an administrative hearing, which was held on May 5, 2005 before

---

        [1]  References preceded by "T." are to page numbers of the transcript of the administrative record
filed by defendant as part of the answer to the complaint (Item 6).

        [2]  "Neurocardiogenic syncope" is fainting caused by low heart rate or blood pressure.

Administrative Law Judge ("ALJ") Eugene Bond (T. 285-304).  On September 7, 2005, the

ALJ determined that plaintiff was not disabled and not entitled to SSDI benefits (T. 24-31).

The ALJ's decision became the Commissioner's final determination on January 20,

2006, when the Appeals Council declined plaintiff's request for review (T. 7-10).   On

March 20, 2006, plaintiff instituted this action seeking judicial review of the Commissioner's

final determination (Item 1).  The Commissioner filed an answer on May 19, 2006 (Item 3).

Plaintiff moved for judgment on the pleadings on August 15, 2006 (Item 4), and the

Commissioner cross-moved for the same relief on August 17, 2006 (Item 5).

## DISCUSSION

**I.      Scope of Judicial Review**

Under the Social Security Act, a person is entitled to Social Security disability

benefits when he or she is unable "to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not

less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A); *Melville v. Apfel*, 198 F.3d 45, 50 (2d

Cir. 1999).  Such a "physical or mental impairment" must be demonstrable by medically

acceptable clinical and laboratory diagnostic techniques.   42 U.S.C. § 423(d)(3).

Determinations of disability are based on objective medical facts, diagnoses or medical

opinions inferable from these facts, subjective complaints of pain or disability, and

educational background, age, and work experience.  *Mongeur v. Heckler*, 722 F.2d 1033,

1037 (2d Cir. 1983); *Fishburn v. Sullivan*, 802 F. Supp. 1018, 1023 (S.D.N.Y. 1992).

The Act states that, upon district court review of the Commissioner's decision, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).  Substantial evidence is defined as evidence which "'a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel,* 167 F.3d 770, 773-74 (2d Cir.  1999).  Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may neither try the case *de novo* nor substitute its findings for those of the Commissioner.  *Richardson,* 402 U.S. at 401.  "The court's sole inquiry is 'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner."  *Winkelsas v. Apfel,* 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000) (quoting *Sample v. Schweiker,* 694 F.2d 639, 642 (2d Cir. 1982).

However, "'[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards.'"  *Gartmann v. Sec'y of Health and Human Servs.,* 633 F. Supp. 671, 680 (E.D.N.Y. 1986) (quoting *Klofta v. Mathews,* 418 F. Supp. 1139, 1141 (E.D.Wis. 1976).  The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence.  *Tejada,* 167 F.3d at 773.

3

II.     **Standards for Determining Eligibility for Disability Benefits**

The Regulations set forth a five-step process for the ALJ to follow in evaluating disability claims.  *See* 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings").  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity ("RFC") based on a series of charts provided in the Regulations at 20 C.F.R. § 404. Subpart P, Appendix 2 (the "Grids").  *See Curry v. Apfel,* 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari,* 2002 WL 856459, at \*3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant demonstrates an inability to perform past work, the burden shifts

4

to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined that plaintiff had not engaged in substantial gainful employment activity since the date of the alleged disability onset (T. 30).   In reviewing plaintiff's medical records, the ALJ found that plaintiff suffers from back disorders which are "severe" for purposes of the Regulations, but that the impairments, individually or in combination, do not meet or equal the requirements of the Listings (T. 26).   Proceeding to the fourth step of the sequential evaluation process, the ALJ found that plaintiff is capable of performing her previous relevant work as a social welfare examiner (T. 29). Alternatively, the ALJ found that plaintiff has the RFC to perform a limited range of light work or sedentary work with certain restrictions, including a sit/stand option and limited use of the dominant hand (T. 28, 29).   Relying on the testimony of a vocational expert ("VE"), the ALJ  found that plaintiff could perform a significant number of jobs in the national and local economy, including counter clerk, router, dry cleaner/counter clerk, document preparer, information clerk, and caller operator (T. 29).   Accordingly, the ALJ concluded that plaintiff was not disabled for purposes of the Social Security Act at any time since the alleged onset of her disability (T. 31).

The Commissioner contends that the ALJ's findings are supported by substantial evidence.  Plaintiff contends that the ALJ improperly found that her impairments of carpal tunnel syndrome, pulmonary embolism and neurocardiogenic syncope were not "severe," failed  to properly evaluate her RFC and credibility, and improperly found that plaintiff was capable of performing her past relevant work.

### III.   The Medical Evidence

Plaintiff's medical history includes Guillain-Barre syndrome in July 1986 (T. 95) and thyroidectomy in 2001 (T. 93).  On July 11, 2002, Dr. Timothy Rasmusson diagnosed plaintiff with phlebitis and varicose veins, and performed a vein excision of the left leg (T. 163).

On July 18, 2002, a CT scan of plaintiff's spine revealed a disc protrusion at L4-5 and degeneration at L5-S1 (T. 162).  A magnetic resonance imaging (MRI) scan on August 8, 2002 indicated mild lumbar stenosis and disc protrusion at L4-5 (T. 161).  On August 12, 2002, plaintiff was seen by Dr. James G. Egnatchik, a neurosurgeon, complaining of left hip and buttock pain.  Dr. Egnatchik noted the disc herniation at L4-5 and degenerative disc disease at L5-S1 (T. 128).  He recommended a course of steroid injections and physical therapy (*id.*).

Plaintiff saw Dr. Leonard Kaplan on August 16, 2002.  Dr. Kaplan noted the disc herniation at L4-5 and a disc bulge with bilateral foraminal stenosis at L5-S1 (T. 105).  Plaintiff  underwent epidural injections on August 27, 2002 (T. 104) and October 1, 2002 (T. 103).  On October 7, 2002, plaintiff reported that the injections were not effective, and Dr. Egnatchik recommended a microdiscectomy (T. 125-26).

Plaintiff underwent the microdiscectomy surgery on November 26, 2002 (T. 159).  On December 23, 2002, plaintiff was doing "fairly well," the surgical wound was well-healed, and Dr. Egnatchik stated that plaintiff could return to work on January 30, 2003 (T. 123).

On October 20, 2002, plaintiff was seen by Dr. David Avino for chest pain (T. 243-45).  In February 2003, Dr. Avino determined that plaintiff's chest discomfort was atypical

for acute coronary insufficiency.  An echocardiogram taken on October 30, 2002 was negative for ischemia (T. 238).  Dr. Avino recommended regular exercise and smoking cessation (T. 239).

On March 11, 2003, plaintiff was seen by Dr. Albert Diaz-Ordaz, complaining of chest discomfort, lightheadedness, palpitations, and dysphagia (T. 111).  On March 17, 2003, plaintiff underwent a esophagogastroduodenoscopy (EGD), which revealed gastritis, hiatal hernia, and mild esophageal stenosis (T. 110).

On April 1, 2003, plaintiff returned to Dr. Egnatchik for follow-up to her microdiscectomy (T. 121).  Plaintiff complained of pain in her left buttock, running down into her left leg, with a feeling of weakness and numbness in both hands and facial numbness (*id.*).  Plaintiff's wound was well healed, she had a normal gait, range of motion in her lower back was intact, reflexes were intact, motor strength was 5/5, she could rise on her toes and heels, and sensation was intact and symmetrical (*id.*).  Dr. Egnatchik recommended a lumbar MRI scan to rule out recurrent disc herniation (T. 122).  The MRI taken April 16, 2003 revealed no herniation (T. 204).

On April 23, 2003, plaintiff saw Dr. Egnatchik for further follow-up for lower back and left buttock pain.  Dr. Egnatchik recommended conservative observation.  He believed the nerve was still inflamed and needed some time to heal (T. 188).  In May 2003, plaintiff underwent a surgical procedure and developed a pulmonary embolism (T. 187, 268-70).  She was treated with Coumadin (T. 270).  On June 30, 2003, plaintiff  had seen gradual improvement in her back pain, and her reflexes were active and symmetrical.  Dr. Egnatchik "did not see any cause for concern with respect to [plaintiff's] thoracic spine."

7

(T. 187).  The MRI revealed a small left paracentral disc protrusion at T5-6 and mild disc degeneration at T4-5, T8-9 and T9-10 (T. 203).

In January 2004, plaintiff reportedly fell down the stairs.  She saw Dr. Egnatchik on March 10, 2004 complaining of lower back pain, pain into her hips and radiating into her left leg, and numbness in her feet (T. 185).  Dr. Egnatchik ordered another lumbar MRI (T. 186).  The MRI showed enhancing fibrovascular tissue surrounding the left descending L5 nerve root, degenerative disc disease at L5-S1, and moderate interspace narrowing and loss of signal at L4-5 (T. 183).  On March 29, 2004, Dr. Egnatchik recommended a transforminal lumbar interbody fusion (TLIF) at L4-5 (T. 184).

In June 2004, plaintiff was treated at the emergency room of Mercy Hospital for chest pain (T. 145-46).  In July 2004, plaintiff reported symptoms of syncope or near syncope to Dr. Avino, including  lightheadedness, clamminess, and palpitations (T. 236).  Dr. Avino suspected a neurocardiogenic etiology and ordered a tilt table study (T. 237).  On August 11, 2004, plaintiff decided to postpone the TLIF surgery.  On August 18, 2004, Dr. Avino prescribed Atenolol and reviewed management options for plaintiff's neurocardiogenic syncope (T. 235).  On September 1, 2004, Dr. Avino stated that plaintiff had experienced significant improvement on Atenolol.  She experienced no syncope since her last visit, only one episode of lightheadedness, her palpitations were rare, and plaintiff felt "back to normal."  (T. 232.)

On September 14, 2004, plaintiff was admitted to the hospital with chest pain (T. 272).  Cardiac isoenzymes were negative for myocardial injury (*id.*).  Angiography was normal (T. 274-75).  Upon discharge, plaintiff's condition was good, without problems or

complications (T. 272).  She was advised against strenuous activity and heavy lifting and was excused from work until she was seen again by her doctor (T. 273).

A lumbar MRI scan taken on March 31, 2005 revealed a loss of signal intensity at L4-5 and L5-S1 (T. 247).  At L4-5, there was diffuse broad based disc bulge and degenerative joint disease (T. 248).  Nerve conduction studies in March 2005 revealed "right and left median nerve entrapment at, or distal to the wrists of moderate degree" (T. 249).

On May 30, 2003, P. Smith, a medical consultant, reviewed plaintiff's medical records and determined that she could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8-hour work day, sit about 6 hours, and push and/or pull without limitations (T. 130).  The only postural limitations found were for occasional stooping, crawling, and crouching (T. 131).

On June 13, 2003, Andrew A. Burger, M.D., reviewed plaintiff's medical records and determined that the medical evidence was "insufficient to specifically assess claimant's ability to sit for 6 out of 8 hours and stand and walk for 2 hours a day" (T. 135).  Dr. Burger recommended that a current detailed neurological exam be obtained and that clarification was needed from plaintiff's treating physician "as to residual disc and/or radiculopathy[,] . . . current treatment and response to treatment." *Id.*

On June 24, 2003, Dr. Kaplan was unable to provide a medical opinion regarding plaintiff's ability to do work-related activities (T. 138).  It appears that plaintiff saw Dr. Kaplan on only two occasions (T. 103, 105).

**IV.    Other Evidence**

At the hearing, plaintiff testified that she graduated from high school and took some courses at Erie Community College (T. 291).  She worked as a social welfare examiner and last worked on June 22, 2004.  She left the position because she was "passing out," was hospitalized with a pulmonary embolism in September 2004, and her back was "acting up."  *Id.*  Plaintiff stated that she has not looked for other work because she is unable to sit or use her hands, and her feet are numb (T. 292).  She no longer drives because of episodes of neurocardiogenic syncope (*id.*).

Plaintiff stated that her husband does most of the cooking and all of the cleaning and grocery shopping (T. 292).  Plaintiff does not participate in any activities (T. 293).  She takes Coumadin and Lortab for pain (*id.*).  She has had one pulmonary embolism since taking Coumadin (*id.*).

Plaintiff described her back pain as between her shoulder blades and her hips and down through her back (T. 294).  She rated the pain 8 on a scale to 10 (*id.*).  Plaintiff stated that her feet fall asleep after sitting for about five minutes (*id.*).  She switches between sitting and standing and lies down between six and eight times per day for up to an hour (T. 295).  Plaintiff was diagnosed with carpal tunnel syndrome in both hands (T. 296).  She has weakness and numbness in her hands and drops things (T. 297 ).  Plaintiff has episodes of syncope or near syncope about four to five times per week (T. 299).

Tonya Huebacker, a VE, testified that a hypothetical person of plaintiff's age, education, and work experience with the capacity to do unskilled sedentary work with a sit/stand option and limited dominant hand usage could perform a significant number of

jobs in the national economy, including document preparer, information clerk, and call operator (T. 300-01).  Additionally, the same hypothetical person with the capacity to do light work could do a number of jobs, including dry cleaner (T. 301).

## V.  Plaintiff's Impairments

Plaintiff contends that the ALJ erred in failing to consider her impairments of carpal tunnel syndrome, pulmonary embolism, and neurocardiogenic syncope.  The ALJ found that plaintiff's back disorders were "severe" for purposes of the Regulations, but did not meet a listed impairment.  The ALJ did not discuss plaintiff's carpal tunnel syndrome, neurocardiogenic syncope, or pulmonary embolism.

A medically determinable impairment is "severe" for purposes of the Regulations if it is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ."  20 C.F.R. §404.1520(c).  Here, the ALJ found plaintiff's back disorders to be severe, and necessarily found that plaintiff's history of pulmonary embolism, neurocardiogenic syncope, and carpal tunnel syndrome did not significantly limit her ability to do basic work activities.  With regard to plaintiff's history of pulmonary embolism, the medical records indicate that plaintiff experienced two episodes–one following surgery in 2004 and another approximately three months later while she was taking Coumadin.  This history of embolism, while certainly troubling to the plaintiff and her doctors, is not debilitating and does not significantly limit plaintiff's ability to do basic work activities.  Likewise, plaintiff's reliance on Coumadin, a blood-thinning medication, does not interfere with her ability to work.  Accordingly, the ALJ did not err in

determining that plaintiff's history of pulmonary embolism was not a severe impairment for purposes of the Regulations, either alone or in combination with her other impairments.

With respect to plaintiff's history of neurocardiogenic syncope, the medical records indicate that plaintiff experienced significant improvement while taking Atenolol.   In contrast, at the hearing, plaintiff stated that she experienced syncope or near syncope four to five times per week and could no longer drive an automobile.  Episodes of fainting or near fainting could be found to significantly limit one's ability to work.  Likewise, carpal tunnel syndrome is generally regarded as a "severe" impairment for purposes of the Regulations.  *See Maysonet v. Barnhart,* 2006 WL 2794434, *5 (W.D.N.Y. August 28, 2006); *Olmeda v. Barnhart*, 2006 WL 2255003, *6 (S.D.N.Y. August 01, 2006).  However, neither of these impairments, either singly or in combination, meets or exceeds an impairment in the Listings.  Here, despite his failure explicitly to find that plaintiff's carpal tunnel syndrome and neurocardiogenic syncope were "severe" impairments, the ALJ properly moved on to the next step in the sequential evaluation.  Thus, the ALJ committed no error in failing to specifically find that plaintiff's carpal tunnel syndrome, pulmonary embolism, or neurocardiogenic syncope were "severe" impairments.

## VI.    Plaintiff's Residual Functional Capacity

The ALJ found that plaintiff could perform some light work and some sedentary work with a sit/stand option and limited use of her dominant hand.  Plaintiff contends that there is no indication in the record of her dominant hand, the ALJ did not consider plaintiff's history of syncopal episodes in assessing her RFC, and the RFC determination does not clearly indicate plaintiff's exertional capabilities.

There is no evidence of plaintiff's dominant hand, and no indication that plaintiff's nerve entrapment, which is bilateral, affects only the dominant hand.  Additionally, the ALJ did not consider plaintiff's history of syncopal episodes in assessing her RFC.  Plaintiff testified that she experiences syncope or near syncope approximately four to five times per week.  Finally, there is no medical evidence of plaintiff's ability to do work-related activities.  Dr. Andrew Burger stated that the medical record was "insufficient to specifically assess the claimant's ability to sit for 6 out of 8 hours and stand and walk for 2 hours a day" (T. 135).  Additionally, Dr. Burger recommended that a current detailed neurological exam be obtained and that further information be sought from plaintiff's treating physician to clarify plaintiff's condition, her current treatment, and her response to that treatment (*id.*).  One of plaintiff's treating physicians, Dr. Leonard Kaplan, was contacted to provide an opinion as to plaintiff's RFC.  Dr. Kaplan was unable to state an opinion as to plaintiff's ability to perform work-related activities, as it appears that he saw plaintiff on only two occasions for epidural injections.  Only a state disability consultant reviewed plaintiff's medical records and found that she was able to do any work.  Accordingly, the court finds that the ALJ's determination that plainitff is capable of performing some light and some sedentary work is not supported by substantial evidence.  If the medical evidence received from treating sources is inadequate, it is the responsibility of the ALJ to recontact the medical sources to obtain sufficient information and properly develop the record with respect to plaintiff's RFC. *See* 20 C.F.R. § 404.1512(e).  Here, none of plaintiff's treating physicians completed an assessment of plaintiff's RFC to assist the ALJ in determining plaintiff's exertional limitations and ability to work.  Upon remand, the ALJ should request an adequate RFC assessment from plaintiff's treating physicians.

**VII.    Plaintiff's Credibility**

Plaintiff contends that the ALJ erred in assessing her credibility.   In evaluating subjective allegations of pain, the ALJ must assess whether medical evidence shows "the existence of a medical impairment . .. which could reasonably be expected to produce the pain or other symptoms alleged . . . ."  42 U.S.C. § 423(d)(5)(A).  If there is "conflicting evidence about a [plaintiff's] pain, the ALJ must make credibility findings."  *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999).  When the alleged symptoms suggest greater severity of impairment than the objective medical evidence alone, the ALJ considers all the evidence submitted, and considers "the extent to which there are any conflicts between your statements and the rest of the evidence . . . ."  20 C.F.R. § 404.1529(c)(4).  The ALJ will also consider other factors, such as daily activities; the location, duration, frequency, and intensity of symptoms; the type, effectiveness, and side effects of medication; and other treatment or measures to relieve those symptoms.  *See* 20 C.F.R. § 404.1529(c)(3); Social Security Ruling ("SSR") 96-7P, 1996 WL 374186 (July 2, 1996).  "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."   SSR 96-7P.   Therefore, "[a]n [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must [do so explicitly and] set forth his or her reasons with sufficient specificity to enable [the courts] to decide whether the determination is supported by substantial evidence."  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y.1999) (internal quotation marks, citation omitted); *see Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y.1987).

Here, the ALJ found plaintiff's subjective complaints credible to the extent that she is unable to perform work beyond that which he found her capable–some light and some sedentary work (T. 28).  He noted no muscle atrophy, abnormal reflexes, or significant motor or sensory deficits (*id.*).  Finally, the ALJ stated that plaintiff's degenerative disc disease and right and left medial nerve entrapment of the wrists did not prevent her from working within the limitations of a sit/stand option and limited use of the dominant hand (T. 29).

This discussion of plaintiff's subjective allegations is inadequate.  The ALJ recited plaintiff's allegations of pain and limitation, but did not explain why he rejected them.  He stated that plaintiff was treated with prescription medications and epidural injections, but failed to note that plaintiff underwent one surgical intervention and had been advised to undergo another.  The ALJ also stated that plaintiff had no restrictions on her driver's license, yet failed to note that plaintiff testified that she no longer drove because of her syncopal episodes.  The ALJ noted plaintiff's limited daily activities, but failed to explain why they were inconsistent with an inability to work.  The ALJ's determination that plaintiff could work within the limitations he formulated was conclusory at best.  Remand is necessary for a proper evaluation of plaintiff's subjective complaints.

## VIII.   Plaintiff's Past Relevant Work

Finally, plaintiff argues that the ALJ erred in determining that she could perform her past relevant work.  In her work history report, plaintiff stated that she sat and interviewed clients for government assistance, completed paperwork, and searched databases (T. 62).  She walked about one half-hour, stood for one half-hour, and sat for seven hours out of

15

the work day.  Plaintiff also stated that she wrote, typed, or handled small objects for seven

hours each day (*id.*).  She lifted and carried less than ten pounds (id.).

The ALJ's determination that plaintiff can do her previous work is not supported by

substantial evidence.  Dr. Burger stated that the medical record was "insufficient to

specifically assess the claimant's ability to sit for 6 out of 8 hours and stand and walk for

2 hours a day" (T. 135).  Additionally, Dr. Burger recommended that a current detailed

neurological exam be obtained and that further information be sought from plaintiff's

treating physician to clarify plaintiff's condition, her current treatment, and her response to

that treatment (*id.*).  This was not done.  Additionally, the VE was not questioned regarding

plaintiff's ability to do her past relevant work.  Remand is necessary to properly assess

plaintiff's ability to do her past relevant work.


## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the

pleadings (Item 5) is denied, and plaintiff's cross-motion (Item 4) is granted.  The matter

is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings

consistent with this opinion.

So ordered.

\s\ John T. Curtin
_____
JOHN T. CURTIN
United States District Judge

Dated: 2/7         , 2007
p:\pending\2006\06-170.dec2806